# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | 08 CV 5983 |
| v. | ) | |
| | ) | |
| LANSAL, INC., d/b/a HOT MAMA'S | ) | **Honorable David H. Coar** |
| FOODS and CHRIS SINENI, individually, | ) | |
| | ) | Magistrate Judge Valdez |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court is a Motion for Summary Judgment filed by Defendant Lansal, Inc.

against Plaintiff Jane Doe.  Lansal seeks summary judgment in its favor on the issue of its

liability for Count I, a sexual harassment claim under Title VII.[1]  For the reasons stated below,

Defendant's Motion for Summary Judgment is DENIED.

## FACTS

Defendant Lansal, Inc., d/b/a Hot Mama's Foods, is a Massachusetts corporation.  (Def.

SOF ¶ 2.)  In late 2003, the Plaintiff became employed at Hot Mama's Elk Grove, Illinois

---

[1] Defendant titles its motion "Motion for Summary Judgment on Counts I & II", and argues in its brief that the record contains no evidence to support Count II, a retaliation claim.  However, Plaintiff has already stipulated to the dismissal of Count II. (Dkt. [47], [56].)

production facility as a line production worker.  (Def. Rule 56.1 Statement of Material Facts

("SOF") ¶ 7.)  At this time, Plaintiff operated under an alias because she had not yet obtained

legal resident status in the United States. (Def. SOF ¶ 8, 30.)  Spanish is Plaintiff's primary

language.  (Def. SOF ¶ 11.)

Upon being hired, Plaintiff received a copy of the company's Employment Manual in

Spanish and signed a statement acknowledging her receipt.  (Def. SOF ¶ 10.) Hot Mama's sexual

harassment policy, contained in its manual, states that sexual harassment is unlawful and will not

be tolerated by Hot Mama's.  (Def. SOF ¶ 13-14.)  The policy contains a definition of sexual

harassment and states that the company will promptly respond to complaints with an

investigation and eliminate offending conduct or impose disciplinary actions where appropriate.

(Def. SOF ¶ 14-18.)  The policy provides internal reporting procedures for employees as well as

information on filing complaints with the Equal Employment Opportunity Commission

("EEOC") and Illinois Human Rights Commission. (Def. SOF ¶ 20-21.)  The Company

conducted annual training sessions, attended by Plaintiff, addressing the issue of sexual

harassment. (Def. SOF ¶ 22.)

Chris Sineni was Operations Director at the Hot Mama's Elk Grove facility.  (Def. SOF ¶

26.)  As Operations Manager, Sineni had the authority to discipline and terminate all employees

at the facility. (Pl. SOF ¶ 2.)

Between 2005 and 2008, approximately, sexual acts occurred between Sineni and

Plaintiff. (Pl. SOF ¶ 10-14.)  Sineni ejaculated onto Plaintiff when they engaged in sexual

conduct. (Pl. SOF ¶ 14.)  Plaintiff has testified that Sineni forced her to submit to sexual acts

against her will, either masturbating and ejaculating on or around her or requiring her to perform

oral sex on him. (Pl. SOF ¶ 10.)  According to Plaintiff's testimony, Sineni forced her to comply

by explicitly and implicitly threatening to deport, terminate, discipline, or expose her. (Pl. SOF ¶ 11, 13.) Defendant maintains that all contact between Sineni and Plaintiff was consensual and welcome. (Pl. SOF ¶ 10-16, Responses.)

In January 2008, Plaintiff obtained her documentation to work legally in the United States. (Pl. SOF ¶ 15.) Plaintiff was permitted to keep her job and she was re-employed under her true name and social security number. (Def. SOF ¶ 32.) Plaintiff testifies that she informed Sineni that she would no longer allow him to engage in sexual activity with her now that she "had [her] papers." (Pl. SOF ¶ 15; Pl. Dep. 125:7-126:4; Def. SOF ¶ 44.)

On May 8, 2008, Sineni ejaculated on Plaintiff. (Pl. SOF ¶ 16.) Plaintiff testifies that, because she "saw that everything was going to continue the way it was," she decided to quit. (Pl. SOF ¶ 16; Pl. Dep. 125:10-12, 57:9; 126:3-7.) Plaintiff resigned from Hot Mama's in May of 2008. (Def. SOF ¶ 36.)

Plaintiff never filed a harassment claim with the management at Hot Mama's. (Def. SOF ¶ 37.) She testified that her one phone call to Human Resources in Massachusetts failed due to language barriers. (Pl. Dep. 62:5-63:5.) After resigning, Plaintiff filed a Charge of Discrimination with the EEOC. (Def. SOF ¶ 40; Dkt. [1], Ex. 1.) Defendant was wholly unaware of Plaintiff's allegations until it received her EEO complaint. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party

seeking summary judgment bears the burden of establishing that no genuine issue of material

fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden,

the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient)

demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at

252.

When reviewing a motion for summary judgment, the court must view the facts in the

light most favorable to the nonmoving party and draw all reasonable inferences in that party's

favor. *See Schuster v. Lucent Tech., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). At summary

judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility

of witnesses, or to determine the truth of the matter, but instead to determine whether there is a

genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508,

512 (7th Cir. 2008).


**ANALYSIS**


**I. Sexual Harassment under Title VII**


Title VII forbids workplace discrimination based on an individual's sex. *Roby v. CWI,*

*Inc.* 579 F.3d 779, 784 (7th Cir. 2009) (citing 42 U.S.C. § 2000e-2(a)(1)). Sexual harassment

violating this prohibition can take one or both of two forms: *quid pro quo* harassment or hostile

work environment harassment. *Venters v. City of Delphi*, 123 F.3d 956, 974 (7th Cir. 1997).

*Quid pro quo* harassment occurs when "the availability to the plaintiff of tangible employment

benefits is conditioned upon her compliance with a harasser's sexual demands." *Id*; *see also Brill*

*v. Lante Corp.*, 119 F.3d 1266, 1274 (7th Cir. 1997) (*quid pro quo* harassment occurs "when a

supervisor conditions a tangible job consequence on an employee's submission to his sexual demands or advances"). Hostile work environment claims, on the other hand, describe harassment that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *Venters*, 123 F.3d at 974 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)); *see also Hobbs v. City of Chicago*, 573 F.3d 454, 464 (7th Cir. 2009) ("The conduct complained of must be severe or pervasive 'so as to alter the conditions of [the employee's] environment and create a hostile and abusive working environment.' " (quoting *Winsley v. Cook County*, 563 F.3d 598, 606 (7th Cir. 2009)).

Defendant argues that Plaintiff may not claim *quid pro quo* sexual harassment at this stage because her Complaint repeatedly employed the term "hostile work environment" rather than "*quid pro quo*." Yet, the facts alleged in the Complaint, and maintained throughout discovery, plainly describe a typical *quid pro quo* claim: Plaintiff asserts that she submitted to the sexual advances of her supervisor after he allegedly conditioned the continuance of her employment on her acquiescence to his demands. Plaintiff's reliance on a new legal theory in her summary judgment brief, consistent with the facts alleged in her complaint, thus poses no problems. "Having specified the wrong done to [her], a plaintiff may substitute one legal theory for another without altering the complaint." *Ridings v. Riverside Medical Center*, 537 F.3d 755, 764 (7th Cir. 2008) (citing *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) (finding that a trial court may appropriately consider a theory raised for the first time in plaintiff's summary judgment brief); *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Complaints in a system of notice pleading initiate the litigation but recede into the background as the case progresses. Later documents, such as the pretrial order

under Rule 16(e), refine the claims; briefs and memoranda supply the legal arguments that bridge the gap between facts and judgments."); *U.S. Plastic Lumber, Ltd. v. Strandex Corp.*, No. 02-C-211, 2003 WL 23144861, at \*10 (W.D. Wis. Feb. 07, 2003).  This Court will therefore address Plaintiff's *quid pro quo* claim where relevant.

## II. Employer Liability for Sexual Harassment

The Supreme Court established the standards governing the liability of an employer for a supervisor's sexual harassment of a subordinate employee in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  In *Ellerth*, the Court considered "[w]hether a claim for *quid pro quo* sexual harassment may be stated under Title VII . . . where the plaintiff employee has neither submitted to the sexual advances of the alleged harasser nor suffered any tangible effects . . . as a consequence of a refusal to submit to those advances"  *Ellerth*, 524 U.S. at 753.  The *Ellerth* Court did not find the traditional distinction between *quid pro quo* harassment and hostile environment harassment helpful to its vicarious liability analysis.  *See id.* at 753-54 (with the reservation that both terms remain relevant to Title VII litigation for issues other than vicarious liability).  The Court instead fell back on the principles underpinning the general common law of agency, *see id.* at 755-63, and adopted a test distinguishing between "cases in which the supervisor takes a tangible employment action against the subordinate and those in which he does not." *Molnar v. Booth*, 229 F.3d 593, 599-600 (7th Cir. 2000) (citing *Ellerth*, 524 U.S. at 760-65); *see also Faragher*, 524 U.S. at 805-07.

Where the employee has *not* suffered a tangible employment action, the employer can

defeat liability only if it establishes an affirmative defense consisting of two elements: (1) that

the employer exercised reasonable care both to prevent and to correct promptly any sexually

harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of

any preventive or corrective opportunities that were provided by the employer or otherwise

available. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 82 (7th Cir. 2000) (citing

*Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765). Where the employee *has* suffered a

tangible employment action, that is, "a significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits," the employer may not assert the *Faragher/Ellsworth*

affirmative defense. *Ellerth*, 524 U.S. at 761, 765. The Supreme Court reasoned that, because a

"tangible employment action taken by the supervisor becomes for Title VII purposes the act of

the employer," interpreting agency principles to allow an employer to escape liability in such

cases would be implausible. *Id.* at 762; *see also Molnar*, 229 F.3d at 600 (in cases involving

tangible employment actions, the employer is simply "liable without more").

Defendant claims that it is entitled to assert the *Faragher/Ellerth* defense, whereas

Plaintiff argues that the defense is not available in the instant case. The critical to this

controversy is whether Plaintiff has suffered a "tangible employment action" as envisioned by

the Supreme Court in *Faragher*, *Ellsworth*, and subsequent jurisprudence.[2]

---

[2] The Court dismisses out of hand Plaintiff's initial argument, wherein she suggests that the *Faragher/Ellerth* defense is not available in *quid pro quo* cases in which the employee has submitted to the harasser's sexual advances. (Dkt. [57] at 8.) As noted above, the Supreme Court in *Faragher* and *Ellerth* disposed of the *quid pro quo*/hostile work environment distinction for vicarious liability determinations; its decision on the appropriateness of an affirmative defense hinged solely on whether the employee suffered a "tangible employment action," not whether an employee ultimately succumbed to her harasser's *quid pro quo* propositions.

**A. Submission as a Tangible Employment Action**


Plaintiff argues that her acquiescence to Sineni's sexual demands as a means of retaining her employment constitutes a tangible employment action, a position adopted by the Second and Ninth Circuits. *See Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 93 (2d Cir. 2002); *Holly D. v. California Institute of Tech.*, 339 F.3d 1158, 1162 (9th Cir. 2003). These courts of appeals have held that "a plaintiff who contends that she was coerced into performing unwanted sexual acts with her supervisor, by threats that she would be discharged if she failed to comply with his demands, has alleged a tangible employment action under Title VII." *Holly D.*, 339 F.3d at 1162; *see also Jin*, 310 F.3d at 98-99.

In both *Holly D*. and *Jin*, the plaintiffs allegedly submitted to the sexual demands of their supervisors because they believed they would be fired if they resisted. The appeals courts recognized that, had these employees been terminated because they refused their supervisors' advances, such terminations would undoubtedly constitute tangible employment actions. *Holly D.*, 339 F.3d at 1170; *Jin*, 310 F.3d at 98-99. They concluded that "[i]t would be anomalous to find an employer liable when an employee was able to stand up to a supervisor's sexual demands, and therefore provoke an action such as termination, but to find no liability when the employee was unable to refuse and was actually subjected to sexual abuse." *Jin*, 310 F.3d at 99; *Holly D.,* 339 F.3d at 1170.

However, as explained by Judge Brown in his concurring opinion in *Lutkewitte v. Gonzales*, 436 F.3d 248 (D.C. Cir. 2006), this so-called anomaly is a non-issue, given the Supreme Court's justifications for imputing liability in *Faragher*, *Ellerth*, and later, *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). At the root of the problem is the

Second and Ninth Circuits' conflation of the mere availability of the *Faragher/Ellerth* defense with automatic victory for the employer. *Lutkewitte*, 436 F.3d at 264, 266. But where an employee submits to the demands of a harassing supervisor, the employer is hardly absolved of liability. The absence of a tangible employment action only gives the employer the opportunity to prove the elements of the affirmative defense. *Id.* If it fails to do so, the employer remains liable for its supervisor's acts.

The Supreme Court conditioned the availability of the *Faragher/Ellerth* defense on a tangible employment action because, consonant with traditional agency principles, a "master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Faragher*, 524 U.S. at 793 (citing Restatement (Second) of Agency § 219(1) (1957)). After a lengthy analysis, the Court concluded that sexual harassment fell beyond the scope of employment. *Id.* at 793-801. Acknowledging that "there are good reasons for vicarious liability for misuse of supervisory authority," as is often the case with harassing supervisors, the Court also sought to preserve its holding in *Meritor*, 477 U.S. at 72, that "an employer is not 'automatically' liable for harassment by a supervisor who creates the requisite degree of discrimination." *Id.* at 804.

The Supreme Court resolved this tension by holding employers strictly liable when a tangible employment action had occurred, while offering an affirmative defense to employers in the absence such an action. *Id.* at 805. The Court reasoned that in cases involving tangible employment actions, it is "beyond question" that "more than the mere existence of the employment relation aids in commission of the harassment." *Ellerth*, 524 U.S. at 760.[3]

---

[3] *See also id.* at 762 ("Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. . . . The supervisor often must obtain the imprimatur of the enterprise and use its internal processes. . . . For these reasons, a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." (citations omitted)).

Essentially, tangible acts such as firing, demotion, or reduction in compensation are those "most likely to be brought home to the employer [and] the measures over which the employer can exercise greatest control." *Suders*, 542 U.S. at 148. "Absent such an official act, the extent to which the supervisor's misconduct has been aided by the agency relation . . . is less certain. That uncertainty . . . justifies affording the employer the chance to establish, through the *Ellerth/Faragher* affirmative defense, that it should not be held vicariously liable." *Id.* at 148-49 (citations omitted).

This reasoning applies with equal force in submission cases. However repulsive a supervisor's behavior may be, the extent to which an employer has aided the supervisor's harassment is unclear in the absence of an official act altering the conditions of the victim's employment. Without an observable act, "[t]he employer has no way of knowing that its delegated authority has been brandished in such a way as to coerce sexual submission." *Lutkewitte*, 436 F.3d at 270. The employer should therefore have recourse to the *Faragher/Ellerth* defense in such scenarios.[4] *Id.* at 271; *see also Tobin v. Irwin Mortgage Corp.*, No. 03 C 4305, 2006 WL 861258, at *10 (N.D. Ill. Mar. 31, 2006) (rejecting the Second and Ninth Circuit's approach); *Arnold v. Answer Group, Inc.*, No. 07-1040, 2008 WL 2700295, at *6 (W.D. La. July 10, 2008) (same); *Speaks v. City of Lakeland*, 315 F.Supp.2d 1217, 1224-26 (M.D. Fla. 2004) (same, noting also that the approach contradicts Title VII's basic policy of encouraging employees to avoid harm caused by harassment by reporting misconduct quickly); *but see Temores v. SG Cowen*, 289 F.Supp.2d 996 (N.D. Ill. 2003) (adopting the Second and

---

[4] Ironically, it is the position adopted by the Second and Ninth Circuits that produces anomalous results. As noted by Judge Brown, "under their standard, tangibility depends on the employee's actions, not the supervisor's." *Lutkewitte*, 436 F.3d at 270. If a supervisor makes a threat and an employee resists, no tangible employment action occurs. Yet, if the employee acquiesces, the supervisor's action is suddenly a tangible employment action. Assuming that the threats are empty, the availability of the *Faragher/Ellerth* defense thus changes "even though the action itself had not been altered." *Id.* Additionally, an employee faced with a proposition in the Second and Ninth Circuits fares better by submitting to sexual demands rather than refusing and reporting the behavior immediately. *Speaks v. City of Lakeland*, 315 F.Supp.2d 1217, 1226 (M.D. Fla. 2004).

Ninth Circuit approaches).

This Court thus respectfully disagrees with the Second and Ninth Circuits, finding their

approach inconsistent with Supreme Court precedent.  Because the Seventh Circuit has yet to

rule on the issue, this Court looks to the rationale of *Faragher*, *Ellerth*, and *Suders* to guide its

decision.  These cases compel the Court to find unavailing Plaintiff's argument that submission

to sexual advances is *per se* a tangible employment action.  Defendant has the right to avail itself

of the *Faragher/Ellerth* defense unless Plaintiff can point to a tangible employment action

effecting "a significant change in employment status" *Ellerth*, 524 U.S. at 761.


### B. Constructive Discharge as a Tangible Employment Action


By relying heavily on *Joseph v. Voyager Jet Center*, No. 07-0260, 2009 WL 506860

(W.D. Pa. Feb. 27, 2009), Plaintiff alternatively implies that her constructive discharge

constitutes a tangible employment action.[5]  (Compl. ¶ 38; Dkt. [57] at 8.)

In *Suders*, the Supreme Court held that the *Faragher/Ellerth* defense remains available to

employers in constructive discharge claims "unless the plaintiff quit in reasonable response to an

adverse action officially changing her employment status or situation." *Suders*, 542 U.S. at 130;

*see also Robinson v. Sappington*, 351 F.3d 317, 337 (7th Cir. 2003).  Equating the term "official

act" with "tangible employment action," *id.* at 148, the Supreme Court explained:

> Unlike an actual termination, which is *always* effected through an official act of
> the company, a constructive discharge need not be.  A constructive discharge

---

[5] Oddly, Defendant argues that the Seventh Circuit has yet to consider whether constructive discharge qualifies as a
tangible employment action, and urges this Court to resolve in their favor a supposed circuit split on the issue, citing
court of appeals cases from 2003 and earlier. (Dkt. [60] at 2-3.)  This Court will instead rely on *Pennsylvania State
Police v. Suders*, the Supreme Court opinion that resolved the circuit split in 2004, explicitly approving the Seventh
Circuit's approach in its analysis.  *See Suders*, 542 U.S. at 138 (describing the Seventh Circuit's decision in
*Robinson v. Sappington*, 351 F.3d 317 (7th Cir. 2003) as exemplary of "how the 'official act' (or 'tangible
employment action') criterion should play out when constructive discharge is alleged").

involves both an employee's decision to leave and precipitating conduct:  The
former involves no official action; the latter, like a harassment claim without any
constructive discharge assertion, may or may not involve official action. . . . when
an official act does not underlie the constructive discharge, the *Ellerth* and
*Faragher* analysis, we here hold, calls for extension of the affirmative defense to
the employer.  *Id.* at 148.

The *Suders* court concluded that employers could assert the *Faragher/Ellerth* defense

whenever their contribution to a constructive discharge remained uncertain due to the absence of

a tangible employment action (e.g. "an official act of the enterprise" or "an official act reflected

in company records"), which would otherwise clearly indicate the employers' awareness and

control.  *Id*. at 148-49.

The district court in *Joseph*, cited liberally by Plaintiff, refused to instruct the jury on the

*Faragher/Ellerth* defense despite the lack of an underlying tangible employment action.  As

justification, the court stated that *Suders* "was limited to those claims where constructive

discharge resulted from a hostile work environment." 2009 WL 506860, at *1 (citing *Suders*, 524

U.S. at 143 ("[t]his case concerns an employer's liability for one subset of Title VII constructive

discharge claims: constructive discharge resulting from sexual harassment, or "hostile work

environment," attributable to a supervisor.")).  In contrast, the *Joseph* court noted that the alleged

constructive discharge in its case resulted from a *quid pro quo* claim.  It observed that "by

definition, a *quid pro quo* sexual harassment claim necessarily involves an official action. . . .

Accordingly, unlike in a hostile work environment-constructive discharge action, in a *quid pro*

*quo* claim there is no risk that an act of a co-worker or an unofficial act of a supervisor induced

the constructive discharge." *Id.* at *2 (citing *Ellerth*, 524, U.S. at 753-54).

The *Joseph* court's dispositive conclusion that all *quid pro quo* cases necessarily involve

official action is only a "starting point" to the *Faragher/Ellerth* calculus, though.  *Faragher*, 524

U.S. at 802. As the Supreme Court readily acknowledged, "there is a sense in which a harassing supervisor is always assisted in his misconduct by the supervisory relationship." *Id.* Nevertheless, that rationale must be "squar[ed] . . . with *Meritor's* holding that an employer is not "automatically" liable for harassment by a supervisor." *Id.* at 804. The Supreme Court explicitly rejected the pre-*Faragher/Ellerth* state of sexual harassment law wherein the category of harassment determined vicarious liability. *Ellerth*, 524 U.S. at 743 (noting that the rule of automatic liability only motivated plaintiffs' efforts to state their claims in *quid pro quo* terms or expand that category's definition). Instead, the Supreme Court's vicarious liability analysis differentiated between supervisory acts that resulted in tangible employment actions, and those that did not. *Id.*

By ignoring the Supreme Court's tangibility requirement, the *Joseph* court's ruling suffers from the same inconsistencies as *Holly D.* and *Jin*. It matters not for vicarious liability purposes that "in a *quid pro quo* claim there is no risk that an act of a co-worker or an unofficial act of a supervisor induced the constructive discharge." *Joseph*, 2009 WL 506860, at *1. Even if a supervisor heavily exerted his formal authority to directly induce a constructive discharge, his act has no bearing on the availability of the *Faragher/Ellerth* defense unless it is tantamount to a tangible employment action causing "a significant change in [the victim's] employment status." *Ellerth*, 524 U.S. at 761. As stated earlier, only tangible acts warrant the application of strict liability because they are "most likely to be brought home to the employer, the measures over which the employer can exercise greatest control." *Suders*, 542 U.S. at 148.

Absent a tangible employment action, regardless of how much a supervisor may have exploited his status to induce an employee to quit, an employer cannot be precluded from asserting the *Faragher/Ellerth* defense even in *quid pro quo* constructive discharge cases. *See*

*Robinson*, 351 F.3d at 324, 337; *Suders*, 542 U.S. at 150 ("*Robinson* properly recognized that

*Ellerth* and *Faragher*, which divided the universe of supervisor-harassment claims according to

the presence or absence of an official act, mark the path constructive discharge claims based on

harassing conduct must follow.").[6]


## III.  The *Faragher/Ellerth* Affirmative Defense


Having found no tangible employment action capable of precluding Defendant's

assertion of the *Faragher/Ellerth* defense, the Court now turns to whether issues of material fact

exist as to the defense's two components.


### A. Employer's Reasonable Care in Preventing and Correcting Harassment


The first prong of the *Faragher/Ellerth* defense requires that "the employer exercised

reasonable care both to prevent and to correct promptly any sexually harassing behavior."  *Hill*,

218 F.3d at 82 (citing *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765).   The Seventh Circuit

has held that an employer largely satisfies the preventative portion of this prong by maintaining a

---

[6] Although the parties do not reference this argument in their briefs, nor do they raise the issue in their Rule 56.1
Statements of Facts, Plaintiff originally alleged that she resigned in part because Sineni significantly reduced her
overtime hours. (Compl. ¶¶ 35, 38.) Plaintiff maintained this story in her deposition. (Pl. Dep.142:12-16, 143:23-
144:10.)  Defendant has consistently disputed Plaintiff's allegations. (Def. Ans. ¶¶ 35, 38; Pl. Dep. 144:20-149:4.

The Seventh Circuit has held that, where overtime pay is a significant and recurring component of the plaintiff's
compensation, a dramatic reduction in overtime hours can amount to a tangible employment action. *See Henry v.
Milwaukee County*, 539 F.3d 573, 585-86 (7th Cir. 2008) (citing *Lewis v. City of Chicago*, 496 F.3d 645, 653-54
(7th Cir.2007)); *Phelan v. Cook County,* 463 F.3d 773, 785 n. 5 (7th Cir. 2006) ("In this circuit, we have generally
used the terms "adverse employment action" and "tangible employment action" interchangeably.").  The parties have
not addressed how overtime factored into Plaintiff's total compensation, however. Ruling on the issue therefore
seems premature, counseling against summary judgment.  Assuming without deciding that the alleged reduction of
Plaintiff's overtime fails to constitute a tangible employment action, Defendant's subsequent failure to summarily
establish both components of the *Faragher/Ellerth* defense, detailed below, compels the same result.

detailed anti-harassment policy that was distributed to employees. *See Shaw v. Autozone, Inc.*,

180 F.3d 806, 811-12 (7th Cir. 1999) (finding that the "undisputed fact[ ]" that AutoZone

adopted a detailed anti-harassment policy and distributed it to its employees "establish[es], as a

matter of law, that AutoZone exercised reasonable care to prevent sexual harassment"). [7]

It is undisputed that Lansal has met this standard. The company had an anti-harassment

policy that was detailed in its Employee Manual. (Def. Ex. D at 4-5; Def. SOF ¶ 13.) Plaintiff, a

Spanish-speaker, received a copy of the Employment Manual in Spanish ("Hot Mama's Foods

Manual de Empleado") each year she was employed at Hot Mama's. (Def. SOF ¶ 11-12; Def.

Ex. C at 5.) The Company also conducted annual training sessions, attended by Plaintiff,

addressing the issue of sexual harassment. (Def. SOF ¶ 22.)

"The mere existence of such a policy, however, does not necessarily establish that the

employer acted reasonably in remedying the harassment after it has occurred or in preventing

future misconduct." *Cerros v. Steel Technologies, Inc*., 398 F.3d 944, 953 (7th Cir. 2005).

Whether Lansal took appropriate measures after Plaintiff filed her EEOC claim to prevent future

misconduct by Sineni appears to be disputed, albeit tangentially. Plaintiff points to statements by

the company's president, Matthew Morse, indicating that he never doubted Sineni's innocence

nor personally questioned Sineni about the contents of Plaintiff's complaint, aside from one

occasion a number of months later, in which Morse asked if Sineni was hiding anything from

him. (Morse Dep. 27:8-28:24.) Plaintiff also refers to the deposition of Lansal's Human

Resources Director, Lisa Dufour, who similarly expressed that she seriously doubted the veracity

---

[7] The Court notes that articulating an anti-harassment policy will not shield a company from its preventative responsibilities if a company's grievance mechanisms are ineffective. *See Gentry v. Export Packaging Co*., 238 F.3d 842, 847 ( 7th Cir. 2001) (finding that failure to appoint a human resources representative to whom sexual harassment could be reported indicated that the anti-harassment policy was not fully or effectively implemented). Plaintiff complains that one phone call to Human Resources was unsuccessful because of language barriers, and that the one manager she attempted to approach (not one of the contact people indicated in the company's anti-harassment policy) was unhelpful. These observations do not necessarily condemn Lansal's grievance mechanisms as a whole, however, especially given its multiple complaint channels. (Def. Ex. D at 4-5.)

of Plaintiff's Complaint. (Dufour Dep. 36:21-24-37:17-19.) While potentially indicative of the

company's stance on the issue, such stated beliefs are not entirely on point, as they do not

directly relate to the content of Lansal's formal investigation into the matter, if any.

In response, Defendant claims to produce evidence of "a very thorough and detailed

investigation into the Plaintiff's allegations," citing to excerpts of Dufour's deposition wherein

she only states that Lansal hired a lawyer after receiving Plaintiff's EEOC charge, and that no

documentation of any investigation was maintained because said lawyer had been hired. (Dufour

Dep. 25:6, 27:16-18.) Defendant also alleges that "a detailed and thorough investigation was

conducted as evidenced by Hot Mama's detailed response to Plaintiff's EEOC charge of

discrimination," without providing any citation to the record, giving the Court no guidance as to

where to find this illuminating evidence. (Dkt. [60] at 4.) Additional evidence on the

investigations into prior sexual harassment complaints by other employees is similarly lacking or

vague. (Dufour Dep. 9-13.)

Given the sparseness of the record, the Court is simply unable to find at this time that

Defendant is entitled to judgment as a matter of law on this issue. *See Gul-E-Rana Mirza v. The

Neiman Marcus Group, Inc.*, 649 F.Supp.2d 837, 861 (N.D. Ill. 2009).


**B. Employee's Unreasonable Failure to Take Advantage of Preventative or
Corrective Measures**


The second prong of the *Faragher/Ellerth* defense requires that "the plaintiff employee

unreasonably failed to take advantage of any preventive or corrective opportunities that were

provided by the employer or otherwise available. *Hill,* 218 F.3d at 82 (citing *Faragher*, 524 U.S.

at 807; *Ellerth*, 524 U.S. at 765).

It is undisputed that Plaintiff never successfully filed a complaint with members of Lansal Inc.'s management. (Def. SOF ¶ 38.) As a result, Defendant argues that Plaintiff unreasonably failed to take advantage of the opportunities provided by the company, opining that there is "simply no excuse for the Plaintiff's failure to report the alleged harassment." (Dkt. [52] at 9.)

Plaintiff points out that she did in fact avail herself of Defendant's complaint mechanisms, when she filed her EEOC charge after her resignation. *See Haugerud v. Amery School Dist.*, 259 F.3d 678, 699-700 ( 7th Cir. 2001) (finding that plaintiff did not fail to take advantage of Board's sexual harassment policy where the policy allows complainants to file a charge with the Equal Rights Division instead of using an internal complaint procedure, and plaintiff filed accordingly); (Def. Ex. D at 4-5 (Lansal policy providing that an employee may file a complaint with the EEOC)).

Still, weighing in Defendant's favor is the fact that Plaintiff filed her EEOC charge approximately three years after the alleged harassment began. (Pl. Dep. 93:12-13.) On this point, Defendant invokes the Seventh Circuit's holding that "an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment." *Shaw*, 180 F.3d at 813 (finding plaintiff's failure to follow employer's complaint mechanism unreasonable, where her only defense was that "she didn't feel comfortable enough with anyone at [the company] to speak with them about the offensive and repulsive sexual conduct displayed towards her by [her harasser]").

In light of the disputed facts, however, a juror could reasonably find that Plaintiff had a concrete and objective basis for her belief that approaching management would either be futile or

17

result in her termination. Among other things, Plaintiff testified that Sineni repeatedly

threatened to deport her, fire her, or report her to management if she refused to comply with his

demands. (Pl. Dep. 106:11-12; 107:1-3; 115:2-10.) When Plaintiff allegedly attempted to

approach another manager, the other manager simply insisted "I don't know anything." (Pl. Dep.

59:23-60:5.) Finally, Plaintiff's attempt to call Human Resources in Massachusetts failed due to

language barriers. (Pl. Dep. 62:5-63:5.)

The extreme circumstances alleged by Plaintiff, which remain issues of material fact, are

also relevant to the Court's analysis. In *Johnson v. West*, 218 F.3d 725 (7th Cir. 2000), the

Seventh Circuit found that a trier of fact could rationally conclude either way on the

reasonableness of the plaintiff's year-long delay in reporting her harassment, where there was

evidence that her harasser threatened her, verbally abused her, and threw mail in her face. *See

id.* at 732. The Seventh Circuit reasoned that the employee's failure to report harassment "may

have stemmed from [the supervisor's] threats and intimidation, which convinced [the plaintiff] . .

. that to take any action would come at the price of her job. Such a reaction may not be

unreasonable." *Id.*

There is evidence in the record suggesting that Plaintiff may have been in a similar, if not

significantly worse position, considering her allegations of targeted intimidation and sexual

assault. Ultimately, "[a] trier of fact could find that [Plaintiff] was under severe emotional and

psychological stress as a result of the harassment." *Id.*; *see also* (Pl. Ex. L at 24) (Psychologist's

Report finding that Plaintiff meets the criteria for post-traumatic stress disorder and depressive

disorder from her experiences with Sineni). Given these contested issues, summary judgment on

the second prong of the *Faragher/Ellerth* defense is inappropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment on its

liability for Plaintiff's sexual harassment claims under Title VII is DENIED.


Enter:

/s/ David H. Coar


_____

David H. Coar
United States District Judge

Dated: **December 22, 2009**