**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JANE DOE,<br><br>                Plaintiff,<br><br>    v.<br><br>LANSAL, INC., d/b/a HOT MAMA'S FOODS, and CHRIS SINENI, Individually,<br><br>                Defendants.<br><br>MONICA CRUZ,<br><br>                Intervenor. | Case No 08 C 5983<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

    Monica Cruz, Intervenor (hereinafter, "Intervenor") in this case, is simultaneously engaged in another lawsuit against Defendant in the Northern District of Illinois (Case No. 10-5653, the "Judge Lefkow case"). Intervenor asks this Court to modify its protective order so that she may access discovery in this case for use in the Judge Lefkow case. Defendant seeks reconsideration of this Court's implicit finding of standing for Intervenor and argues she has none. Alternatively, Defendant argues the protective order should not be modified. For the following reasons, the Court finds Intervenor does have standing and so denies the Motion to Reconsider. The Court also grants Intervenor's Motion to Modify Protective Order, but with specific limitations.

I. **BACKGROUND**

Plaintiff Jane Doe ("Doe") filed suit in October 2008 against Defendants Lansal, Inc., ("Lansal") and Chris Sineni ("Sineni"). Doe started work in late 2003 at Lansal's Illinois production facility as a line production worker; Sineni was the Operations Director for the facility. Doe alleged that Sineni, between 2005 and 2008, forced her to engage in oral sex and other acts upon threat of firing and deportation. (Doe, at that time, was an illegal alien.)

In gaining employment with Lansal, Doe used a fake name. When Doe received, in January of 2008, documentation allowing her to work in the U.S. legally, she revealed her real name to Lansal supervisors. Doe quit on May 8, 2008.

In the course of discovery, Doe, Lansal and Sineni agreed to a protective order which Judge David Coar approved on May 29, 2009. Defendants and Plaintiff settled February 12, 2010.

The protective order provided that any document, deposition, interrogatory or information designated as "confidential" by the parties would be subject to the protective order. However, it provided that only items containing the following could be, in good faith, marked "confidential":

    (I)    Information which may be used to identify Plaintiff, including her actual name, social security number, or other personally identifying information;

    (ii)        Information relating to the financial history and status of either party;

    (iii)       Medical information; or

    (iv)       Information of a personal nature and/or sensitive nature.

*Doe v. Lansal et al.*, Protective Order, Case No. 08-5983 DKT No. 73, Page ID 995. The order went on to provide that neither party was prohibited from using discovery for litigation in this case, but that "if any confidential documents will be introduced to the public record, they must be redacted to omit identifying information about the Plaintiff." *Id.* at 995, 997. Judge Coar's order allowed for the filing of both restricted and sealed documents. Lastly, the order provides that discovery may be used "for no other purpose whatsoever" besides the litigation at issue (*id.* at 994) and it provides that "either party, or an interested member of the public, can challenge the secreting of particular documents pursuant to this Protective Order by filing a motion with the court." *Id.* at 996.

On August 28, 2009, Defendants filed an exhibit (fully accessible by anyone with a PACER account or using a public terminal at this courthouse) that identified the Plaintiff by the pseudonym she used to obtain her job. Dkt. No. 51-1. Other exhibits filed by Defendant listed her real home address (Dkt. 53-2), the full, real name of Plaintiff's sister (Dkt. 53, Page

ID 317), and referred to Plaintiff by her real first name (Dkt. 53-8, Page ID 361, line 14).

On September 23, 2009, Plaintiffs filed exhibits listing the last four numbers of Plaintiff's Social Security Number (Dkt. 58-2, Page ID 420, line 12), a partial real address matching that filed by Defendants (Dkt. 58-2, Page ID 420, lines 2-6), and the fake name by which she obtained her job. *Id.* at lines 22-24. The publicly accessible deposition goes on to give Plaintiff's husband's real first two names (*Id.* at Page ID 424), the real first names and birth dates of all her children (*Id.* at Page ID 426-427), the real first names of Plaintiff's parents (*Id.* at 428), and numerous other personal identifiers including places of employment, siblings real first names and sometimes real full names. *See generally*, Dkt. 58.

Most revealing, the deposition lists Plaintiff's real last name in two locations. Dkt. 58-2, Page ID 446, line 2, Dkt. 58-3, Page ID 542, line 9.

In that same deposition, there is graphic information revealing numerous sexual encounters between Plaintiff and Defendant Sineni, including allegations of forced sexual encounters by Sineni upon Plaintiff, and allegations that Sineni had similar interactions with Plaintiff's sister, another Lansal employee. The transcript and other documents also reveal that after the last encounter between the Plaintiff and Defendant Sineni, Plaintiff

saved the semen on her shirt, allowing her later to conclusively prove Sineni lied when he denied ever having a one-on-one conversation with her, let alone a sexual encounter.

To the Court's knowledge, neither party ever objected to the other party's publication of this information.

On November 3, 2011, Intervenor entered the case, seeking to use this case's discovery in her separate lawsuit against Defendant and its employee, Ramon Acosta. Judge Coar having retired, the case was reassigned to this Court. Intervenor seeks access to the depositions of Mr. Acosta, Mr. Sineni, several other Lansal employees and an expert witness regarding the Defendant's culture of sexual harassment. Intervenor argues the information is relevant, will promote judicial economy and will prevent the re-deposing of some employees.

Plaintiff's attorney does not object to the Intervenor in this case being given access to discovery, provided Plaintiff's name remains secret.

Defendant objects that allowing parties access to discovery would vitiate the parties' protective agreement and cause unfair prejudice to the company and Mr. Sineni, whose whereabouts are currently unknown by Defendant. Defendant's attorney represents he never would have settled the case had there not been a protective order, that the two cases do not stem from the exact same time frame and that Mr. Sineni's deposition is irrelevant.

## II. <u>LEGAL STANDARD</u>

Granting of a Motion to Reconsider is appropriate only where there is manifest error by the Court or new evidence has come to light. *Mitchell v. JCG Indus.*, No. 10-C-6847, 2012 U.S. Dist. LEXIS 12846 *5 (N.D. Ill. February 2, 2012).

Federal Rules of Civil Procedure 24 and 26 give this Court broad discretion in discovery matters and motions to intervene. However, other factors do put limitations on that discretion, as will be discussed below.

## III. <u>ANALYSIS</u>

### A. Standing

Article III standing requires an injury-in-fact capable of being redressed by a favorable decision of the court. *Bond v. Utreras,* 585 F.3d 1061, 1072-1073 (7th Cir. 2009). In *Bond*, at the request of a journalist third-party intervenor, the District Court modified a protective order. The Seventh Circuit reversed. *Bond*, 585 F.3d 1061 (2009). The reporter, the Seventh Circuit found, had no standing.

*Bond* was a new twist in a substantial line of cases that granted intervenors' motions to amend protective orders. *See, e.g., Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854 (7th Cir. 1994) (citing numerous other cases with similar outcomes). *Bond* pointed out that many of those cases had not dealt with the fundamental issue of standing, something that must come first. It

- 6 -

also highlighted the fact that, in cases that have already settled, there is no active plaintiff with standing upon which the intervenor can piggyback. The *Bond* court found no standing for the reporter based on a First Amendment right to receive speech, because such a right requires a willing speaker, and neither of the *Bond* parties wanted their discovery revealed. *Id*. at 1078.

*Bond* also emphasized that discovery that has not been filed with the court (unlike filed discovery) enjoys no presumption of public access, and thus no right was being violated. *Id.* With no right being violated, the reporter in *Bond* had no injury, and no standing.

The Seventh Circuit differentiated *Bond* from a Third Circuit case, *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (1994). In *Pansy*, the Third Circuit found standing for media organizations seeking access to a settlement agreement. The media in *Pansy* had been unsuccessful in obtaining the requested settlement through a separate state court Freedom of Information action because of the federal court protective order. *Bond* at 1076, n.10. The Seventh Circuit differentiated *Pansy* from *Bond*, noting that the intervenor in *Pansy did* have some claim of right on the information, and the protective order was interfering with that claim. "The state court action had stalled because of the federal-court protective order; this was enough to establish an injury-in-fact." *Id.*

- 7 -

This Court finds the distinction between *Pansy* and *Bond* instructive. In *Pansy*, there was standing because there was a claim of right, and the protective order had interfered with attempts in another court action to exercise that right.

Likewise, here, Intervenor here has attempted to obtain the discovery in another court case (the Lefkow case), and she alleges she has a right (under the Federal Rules of Civil Procedure) to discovery in that case. Like *Pansy*, efforts to exercise that right in the other court have stalled because of this Court's protective order. Intervenor has demonstrated such "stalling," as defined by *Bond*, by attaching exchanges between Intervenor and Defendant in the Judge Lefkow case where Defendant has refused to answer requests for admissions and inspections because the information sought "is covered by a protective order" in this case. *Intervenor's Reply*, 5-6.

Because the protective order in this case has stalled an asserted right to discovery in another case, there is an injury-in-fact as there was in *Pansy* and as recognized by *Bond*. Additionally, a favorable decision of this Court is capable of redressing that injury. Therefore, the Intervenor has standing and the Defendant's Motion to Reconsider the Order Granting Intervention is denied.

**B. Modification of Protective Order**

Where discovery in a previous case will lighten the discovery load in a related case, the Seventh Circuit has approved the modification of protective orders.

> Where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir. 1980) (allowing access to discovery by a third-party intervenor who was suing defendant in another case in another jurisdiction.)

Just such prejudice was found in *Griffith v. University Hospital, L.L.C.,* 249 F.3d 658 (7th Cir. 2001). There, the court denied modification because to do so would have prejudiced plaintiffs significantly in their class action lawsuit because all class action members had been notified of a proposed settlement that explicitly included terms of the protective order. A significant modification of the protective order threatened to upend the settlement altogether. *Id*. at 663. *Griffith* reconfirmed *Wilk's* examination of whether the party opposing modification (1) has any substantial right at stake and (2) whether modifying the agreement would "tangibly prejudice" that right. *Id.*

Recognizing that protective orders must always be grounded in good cause, a number of cases have found modification proper when

the parties themselves step outside the boundaries of that order. *See Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854 (7th Cir 1994) (*allowing* modification of a discovery order after a deponent had made comments on the same topic in a public forum).

Where parties fail to file protected materials under seal, or display protected materials in hearings without closing the courtroom, they can also waive their confidentiality interest. *See Kyles v. J.K. Guardian Sec. Servs.*, No. 97-8311, 2006 U.S. Dist. LEXIS 76203, *16-18 (N.D. Ill. Sept. 26, 2006); *see also Binney & Smith Inc. v. Rose Art Indus.*, No. 94-6882 *6, 1995 U.S. Dist. LEXIS 3151 (N.D. Ill. March 13, 1995) (quoting *Littlejohn v. Bic Corporation*, 851 F.2d 673 (3d Cir. 1988).

In the case before this Court, both parties have demonstrated broad abandonment of their protective agreement. This Court, using the information publicly filed by both parties, was able to find the full name and address of the party supposedly protected by the order. Moreover, "sensitive" and "personal" information that the order was supposed to protect was laid out for all the world to see in filings for summary judgment and fact admissions filed by both parties.

The Court does not lightly discount the substantial reliance parties place on protective orders. Such orders are often a vehicle to full and effective discovery. However, where the

parties themselves disregard the order, it is a strong indication that there is no longer good cause for that order.

The Court also appreciates the argument that Mr. Sineni cannot be reached, and that Lansal would not have settled but for the protective order. However, counsel for Lansal adequately represented Mr. Sineni in opposing this motion, and to the extent Defendant argues for Lansal's and Mr. Sineni's rights in protecting "sensitive" and "personal" information, this argument is unpersuasive given the *ad nauseam* public listing of Sineni's sexual exploits at the facility. That cat is not only already out of the bag, but it has left the building, boarded a train that has left the station and connected with a sailed ship.

The wholesale violation of the agreement, by both parties, and their failure to object to such violations for more than two years and counting has already modified the agreement.

The Court is also persuaded by Intervenor's argument that much, if not all, of what she seeks has been filed with this court and not as private exchanges between the parties. As *Bond* noted, that weighs in favor of access.

*Wilk* further weighs in favor of modification because Intervenor has averred that, at least in some cases, access to discovery will avoid duplicating depositions and a waste of both litigants' and judicial resources. While we doubt the defendant in the Judge Lefkow case, Mr. Acosta, will not be redeposed, that

- 11 -

seems a distinct possibility with the three other employees and the expert witness named.

The Court is also not persuaded that some items sought, such as Sineni's deposition, have no relevance. Although the two cases' time frames are not exactly equivalent, Intervenor has averred that Sineni was the plant manager during her employment. It would seem that Sineni's testimony, as the supervisor of the entire plant, would be relevant, even if only from a culture-of-the-facility standpoint. Moreover, Sineni's professed unavailability only further weighs in favor of allowing access to such discovery.

However, because Intervenor's standing in this case is grounded in her right to discovery in the Judge Lefkow case, it is up to that court to decide relevance matters. Thus, this Court orders no immediate production of discovery items. Rather, it orders the protective order in this case modified to the extent that Judge Lefkow should consider it no bar whatsoever to orders of discovery in her case. Any discovery Judge Lefkow may order in that case concerning this case's discovery items may be carried out without the parties having to return to this court.

## IV. CONCLUSION

Because the Court finds Intervenor has standing, the Defendants' Motion to Reconsider is denied.

Because both Plaintiff and Defendants have already violated their own protective order without complaint for more than two

years, the Court finds that confidentiality interests held by them were waived, and as such will not be substantially prejudiced by granting access to Intervenor. The Motion to Modify the Protective Order is granted to the extent that Judge Lefkow should not view the order as any bar whatsoever to discovery in her case.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 3/5/2012